Erskine M. Phelps v. Lake Street Elevated Railroad Company.

John M. Doane v. Same.

Union Elevated Railroad Company v. Erskine M. Phelps.

Same v. Potter Palmer et al.

Same v. Columbus R. Cummings et al.

1. INJUNCTIONS—*By Street Abutting Property Owners—Remedy at Law.*—Street abutting property owners can not have an injunction to prevent the construction of an elevated railroad upon such street, on the ground that the ordinance of the city permitting such construction is invalid. The remedy for any injury they may sustain is by an action at law.

**Bill for Injunction.**—Appeals from an order of the Circuit Court of Cook County granting an interlocutory injunction; the Hon. OLIVER H. HORTON, Judge, presiding. Heard in this court at the October term, 1895. Order reversed (see opinion). Opinion filed November 18, 1895.

JOHN P. WILSON, CLARENCE A. KNIGHT, EGBERT JAMIESON and FRANKLIN P. SIMMONS, attorneys for appellants, contended that the construction of a railroad in a public street will not be enjoined at the suit of an abutting property owner who has an adequate remedy at law.

While an abutting property owner can not assume to represent the public, and by his individual suit conclude its rights (Davis v. Mayer, 2 Duer. 663; Winterbottom v. Lord Derby, 2 Law R. Exch. 316; Hartshorn v. South Reading, 3 Allen 501; McDonald v. English, 85 Ill. 232; High on Injunctions, Sec. 762; Pomeroy's Eq. Juris., Sec. 1379; City of East St. Louis v. O'Flinn, 119 Ill. 200; City of Chicago v. Union Bldg. Assn., 102 Ill. 379; Patterson v. C., D. & V. Ry. Co., 75 Ill. 588; Vanderpool et al. v. The West & South Towns Ry. Co., Chicago Legal News, March 24, 1894), for damage special and peculiar to himself, he has, under the constitution and laws of this State, a remedy at law.

The fact that by permission to use the street for a par-

ticular purpose an abutting property owner will be specially
damaged affords no ground for restraining such use so long
as the property holder is able to recover and collect all the
damage he suffers.    Vanderpool v. The West & South
Towns Ry. Co., *supra;* Lorie v. North Chicago St. Ry. Co.,
32 Fed. Rep. 270; People v. Kerr, 27 N. Y. 188; Moses v.
Pittsburg R. R., 21 Ill. 516, 523; Stetson v. C. & E. I. R.
R., 75 Ill. 74; Patterson v. C., D. & V. R. R., Id. 588;
Peoria, etc., R. R. v. Schertz, 84 Ill. 135; C. & E. I. R. R.
v. Loeb, 118 Ill. 203; C. & E. I. R. R. v. Ayers, 106 Ill. 511;
Pittsburg & Ft. Wayne R. R. v. Reich, 101 Ill. 511; C. &
E. I. R. R. v. McAuley, 121 Ill. 161; Penn. M. L. I. Co. v.
Heiss, 141 Ill. 35, 58, 59; Tibbets v. The West and South
Towns St. Ry. Co., 54 Ill. App. 180; Same v. Same, 38 N.
E. Rep. 664; North Chicago St. Ry. Co. v. Cheetham, 58
Ill. App. 318.

GREEN, ROBBINS & HONORE, attorneys for appellees.

MR. PRESIDING JUSTICE GARY DELIVERED THE OPINION OF
THE COURT.

Each of these five cases involves one question, common to
them all, which—as we decide it—determines for this court
the law so far as the judgment of this intermediate court
can determine a question which may thereafter be presented
to the Supreme Court.

It is wholly unnecessary to go into detail about the facts.
The question is, can street abutting property owners, free-
hold or leasehold, or persons conducting business upon a
street, have an injunction to prevent the construction of an
elevated railroad upon such street, on the ground that the
ordinance of the city permitting such construction is invalid ?

We hold that such injunction should not be granted; that
the remedy for the injury which the property owner, or
business man, may sustain, is to recover at law, damages
for that injury.    We regard that doctrine to be the doctrine
of the Supreme Court.

In Patterson v. Chicago, D. & V. R. R., 75 Ill. 538, where

the complaint was that without ordinance the railroad had laid a track across a street close to the dwelling of Patterson and thence alongside of his house upon the land of the railroad, to his great damage—stating how, the court said, "the fee of the streets is in the city, and it has the power to control and regulate their use, and any such excess of authority in the use of a street as is here claimed, must be left to be redressed by the public authority, and equity should not, in such case, at the suit of a private individual, enjoin the operating of a railroad." Now, in that case, if Patterson could have stopped the road from using the street crossing, it could have made no use of the track alongside of his house, and thus the unwarrantable use of the street was—by reason of its connection and being indispensable to the use of the track—part of his grievance. For the damage, by prevention or cure, equity could give no relief, but under the constitution his damages could not be denied him.

It is true that the frontage act, recited in North Chicago St. R. R. v. Cheetham, 58 Ill. 318, probably has no application to a mere crossing of a street, nor had the constitutional provision against damaging private property for public use then had the elaborate consideration given to it in Rigney v. City of Chicago, 102 Ill. 64; but the Patterson case was last year cited by the Supreme Court, in Corcoran v. Chicago, M. & N. R. R., 149 Ill. 219, as present authority for the proposition that if the ordinance permitting the laying of a railroad track in the street subjects the street simply to an additional public use, it is well settled in this State that an injunction will not be granted at the suit of an abutting lot owner to restrain such additional use. And in this last case the frontage act, though not alluded to in the case, was applicable, and the doctrine of the Rigney case had long been familiar law when Corcoran's case was decided.

The ordinance under which the railroad was proceeding to lay the tracks of which Corcoran complained, had been by the Supreme Court in a previous case declared void.

The report, 37 Ill. App. 417, when the Corcoran case was in this court, shows that the bill contained enough charges as to his interest in abutting property, and the ruin of such interest and of his business by the proposed tracks, and yet, says the Supreme Court, " The abutting lot owner is remitted to his action at law to recover compensation for the consequential damages resulting to his property from the additional burden imposed upon the street."

Decisions in other States, or by the Supreme Court of this State, in cases of encroachments upon highways for other purposes than furnishing additional facilities for travel or transportation, are not to be considered.

Counsel for the several complainants have endeavored to distinguish these pending cases from former cases upon the ground that the proper construction or legal effect of the frontage law, confers upon abutters not signing, a standing in equity, as otherwise they gain nothing by it; citing Roberts v. Easton, 19 Ohio St. 78. But if " abutting property owners who sign the petition, and thus put in motion the legislative action of the common council, are to a certain extent charged with a duty to the public" (see Doane v. Chicago City R. R., October 14, 1895, in Supreme Court), is no duty to the public charged upon those who will not sign? If, for the purpose of reserving their right to adequate damages, or because of interest in some competing enterprise, present or prospective, or at the solicitation of their neighbors, they refused to sign, are their claims upon a court of equity for its extraordinary—or ought to be extraordinary—interposition increased? And because inquiry into the motives of those who do not sign is impracticable in fact, whatever it may be in theory, it should be held that obedience to the frontage law is a duty of the common council, a remedy for a violation of which is not private.

The first two cases mentioned in the title are appeals by the owners from decrees dismissing their bills for want of equity. The last three are appeals by the railroad from interlocutory orders granting injunctions upon bills filed by owners. All the bills seek as relief to prevent the construction of the elevated railroads.

The decrees dismissing the bills are affirmed; the interloc-, utory orders are reversed, and those cases remanded, with directions to the Circuit Court to dissolve the injunctions.

Mr. Justice Shepard.

I concur, without question, that where, for public purposes of this kind, there is a valid ordinance, the private owner of property abutting on the street is remitted to his remedy at law.

But where, as here, it is admitted by the record that the ordinance is void—that is, as if none existed—I am constrained to the opinion that the private owner of the street may have his remedy in equity by injunction. I do not understand that in any case the Supreme Court has considered the frontage act in connection with questions of this character, and until it does I shall be likely to remain of opinion that something of value was intended by that act to be reserved to the property owner by the legislature. But until the Supreme Court has passed upon the question, the opinion of a majority of this court is binding upon me as the law of the court.